**SCOTTISH AIR INTERNATIONAL, INC. and Murray Vidockler, Plaintiffs,**

v.

**BRITISH CALEDONIAN GROUP, PLC, Adam Thomson, Dennis H. Walter and R. Marshall Gibson, Defendants.**

**No. 85 Civ. 0341 (DNE).**

United States District Court, S.D. New York.

Nov. 30, 1990.

As Amended Dec. 4, 1990.

Dornbush, Mensch, Mandelstam & Silverman, New York City, Karl Savryn, of counsel (Beckman & Kirstein, Washington, D.C., Robert M. Beckman, David M. Kirstein, of counsel, Pepper, Hamilton & Scheetz, Washington, D.C., Donald H. Green, of counsel), for plaintiffs.

Leventhall & Zicklin, New York City, Robert Zicklin, of counsel, for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

Defendants have moved to dismiss the instant action: (1) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over the defendants; (2) pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join parties under Rule 19; (3) under the common law

doctrine which states that courts should not interfere with the internal operations of a foreign corporation; and (4) under the equitable doctrine of forum non conveniens. Plaintiffs have moved pursuant to Federal Rule of Civil Procedure 19(a)(1) to add British Airways as a necessary party and pursuant to Federal Rule of Civil Procedure 15(a) and (d) to amend and supplement their complaint to add a claim against British Airways. For the following reasons, plaintiffs' motion to add British Airways as a necessary party and to amend and supplement their complaint is denied. Defendants' motion to dismiss under the doctrine of forum non conveniens is granted.

## I. BACKGROUND

Plaintiffs have brought this diversity action claiming that defendants have breached an agreement to seat a nominee of plaintiff Scottish Air International, Inc. ("SAI") on the board of directors of defendant British Caledonian Group, plc ("BCG"). There are two sets of events relevant to this dispute. The first involves a shareholders' derivative action filed by Murray Vidockler and SAI, also the plaintiffs in the instant action, against Caledonian Airways (Prestwick), Ltd. ("CAP") in the Southern District of New York in 1965. The second involves plaintiff Murray Vidockler's removal from the board of directors of BCG in 1985.

BCG was incorporated in Scotland in 1960 and has maintained its only business office in Great Britain. BCG is a holding company which exercises general supervision over the diverse businesses of a number of separate and independently managed operating subsidiary corporations. The three individual defendants, Adam Thomson, Dennis H. Walter, and Marshall Gibson, are all domiciliaries, residents, and citizens of Great Britain. They are three of eleven directors of defendant BCG and collectively only own 2.2% of the outstanding shares of BCG.

CAP, is a Scottish corporation and was formed at the same time as BCG.[1] BCG was CAP's majority shareholder and all of BCG's directors were also directors of CAP. CAP was one of BCG's operating subsidiary corporations.

In 1961, BCG, through CAP, sought to initiate airline operations in Britain with service to the United States. BCG obtained a large portion of its capital for this venture from SAI, a New York corporation, and its majority stockholder Murray Vidockler, a New York citizen. SAI was the only United States shareholder of CAP.

In July 1965, SAI initiated a shareholder derivative suit against CAP and several members of CAP's board of directors alleging improper use of corporate funds and improper issuance of shares. That case, *Scottish International, Inc. v. Thomson,* 65 Civ. 1782 (S.D.N.Y. filed July 7, 1965), was before Judge Dudley Bonsal. In January 1966, the parties entered into a settlement agreement (the "settlement agreement") that was approved and so ordered by Judge Bonsal. The settlement agreement was signed by SAI, CAP, and the individual defendants in the instant action who are directors of both CAP and BCG. A key element of the settlement agreement provided that CAP appoint an individual nominated by SAI to CAP's board of directors. In the instant action, plaintiffs also claim that SAI was given a similar right on BCG's board of directors. Vidockler was the representative designated by SAI for this purpose, and was consistently elected to the boards of directors of both CAP and BCG between 1966 and 1985.

In November of 1985, defendants notified Vidockler that he would be removed from BCG's board and that no other representatives of SAI would be nominated. Vidockler was voted off the board at the 1985 meeting of BCG shareholders. SAI and Vidockler then brought the instant diversity action seeking: (1) an injunction directing defendants to comply with the 1966 settlement agreement and certain other agreements between the parties; (2) a dec-

---

**1.** Caledonian Airways (Prestwick) Ltd. is now known as Cal Air International Ltd., but was referred to as Caledonian Airways (Prestwick) Ltd. ("CAP") in all of the parties' papers and will be referred to as CAP in this opinion.

laration that the defendants were in contempt of the 1966 settlement agreement so ordered by Judge Bonsal; and (3) money damages for breach of contract. Defendants moved to dismiss the complaint on the grounds that: (1) this court lacks personal jurisdiction over the defendants; (2) the plaintiffs failed to join all shareholders of the defendant corporation who were necessary to effect the election of Vidockler to the board of directors; (3) ordering the election of Vidockler to the board of directors would constitute interference with the internal operations of a foreign corporation; and (4) the court should decline jurisdiction under the doctrine of forum non conveniens.

In December of 1987, British Airways ("BA") made a successful tender offer for the shares of BCG. In January of 1988, both plaintiffs tendered their BCG shares to BA. BCG continues to be a holding company which possesses assets and has a substantial net worth. BCG's principal asset is Caledonian Airways, formerly British Airtours ("CA"), a wholly owned subsidiary which now conducts a worldwide charter service. On April 15, 1988, the instant action was dismissed by this Court on the grounds of forum non conveniens. On October 31, 1988, the Second Circuit Court of Appeals reversed and remanded this Court's April 15, 1988 order for failure to consider the plaintiffs' claims for contempt and damages. 860 F.2d 57. Plaintiffs then moved pursuant to Federal Rule of Civil Procedure 19(a)(1) to add BA as an indispensable party and pursuant to Federal Rule of Civil Procedure 15(a) and (d) to amend and supplement their complaint in order to add claims that they were not allowed to trade their shares of BCG for shares of BA during BA's tender offer for BCG, but were instead forced to take cash.

## II. DISCUSSION

A. Plaintiffs' Motion

1. *Federal Rule of Civil Procedure 19(a)*

■ Federal Rule of Civil Procedure 19(a) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction shall be joined as a party to the action if "in the person's absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). The term "complete relief" refers only to complete relief between the parties "and not as between a party and the absent party whose joinder is sought." *Arkwright–Boston Mfrs. Mutual Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir.1985) (quoting 3A *Moore's Federal Practice* ¶ 19.07–1[1], at 19–96 (2d ed. 1984)).

■ Plaintiffs contend that as a result of BA's tender offer for shares of BCG, BCG is now an empty shell with no assets. Therefore, according to plaintiffs, any judgment awarding monetary relief to plaintiffs would be ineffective. Consequently, plaintiffs argue that complete relief can not be accorded to them without BA's presence and that BA should therefore be joined as a necessary party pursuant to Rule 19(a).

Plaintiffs' argument is unavailing for the simple reason that BCG has substantial assets with which to satisfy a money judgment awarded to plaintiffs. BCG's acquisition by BA has not created any impediment to plaintiff's ability to collect a judgment from BCG in the instant action. BCG continues to exist as a holding company and has substantial assets with which to satisfy a money judgment. BCG's principal asset is a wholly owned subsidiary, CA, which conducts a profitable worldwide charter service.[2] Accordingly, because complete relief between the parties can be accorded without joinder of BA, plaintiffs' motion to join BA as a necessary party pursuant to Rule 19(a) is denied.

2. *Federal Rule of Civil Procedure 15(a) and (d)*

Federal Rule of Civil Procedure 15(a) provides that any time after a responsive

---

**2.** Between April and September 1988, CA earned operating revenues of approximately $100,000,- 000, employed just under 400 persons, and operated eight B–737 or L–100 aircraft.

pleading is served a party must seek leave from the court to amend a pleading. Rule 15(a) specifically states that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id.* at 182, 83 S.Ct. at 230. The decision to grant or deny a Rule 15(a) motion to amend is within the sound discretion of the district court. *Id.*

 Federal Rule of Civil Procedure 15(d) provides that a party must get leave from the court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is *related* to the claims presented in the original complaint. *Argus, Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 602 (S.D.N.Y.1982) (citing 3 *Moore's Federal Practice* ¶ 15.16[1], at 15–176 (2d ed. 1982)) (emphasis added). Matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading. 3 *Moore's Federal Practice* ¶ 15.16[3], at 15–183 (2d ed. 1989). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *Id.* Thus, in the instant action, in order to deny plaintiffs leave to amend pursuant to both Rule 15(a) and (d), this court must find (1) that plaintiffs' Rule

15(a) motion for leave to amend falls within the range of instances the Supreme Court deemed appropriate grounds for denial of such a motion in *Foman;* and (2) that plaintiffs' Rule 15(d) motion for leave to amend seeks to supplement the complaint with claims unrelated to those now pending.

 Plaintiffs seek leave to amend their first amended complaint in order to assert a claim against BA. Plaintiffs' proposed new claim is set forth in paragraph 22 of its proposed second amended complaint. In paragraph 22, plaintiffs allege that because BA failed to register its 1987 tender offer for BCG under the United States securities laws, plaintiffs were not given the option of exchanging their BCG shares for shares of BA, as were other BCG shareholders outside the United States. As a result, plaintiffs allege that they were required to pay substantial taxes they otherwise could have postponed.[3]

Plaintiffs' claims in the first amended complaint in the instant action arise from plaintiff Vidockler's removal from the board of directors of BCG in 1985. Plaintiffs allege that the defendants and plaintiffs agreed to seat a nominee of SAI on BCG's board of directors. Plaintiffs further allege that this agreement arose from the settlement of the 1965 derivative action brought by plaintiffs in the instant action against CAP. Plaintiffs have requested several remedies with respect to their claims against defendants in the instant action, including an injunction placing Vidockler on the board of BCG, money damages for breach of contract, and damages for defendant's contempt of the 1966 settlement agreement between plaintiffs in the instant action and CAP.

---

**3.** Paragraph 22 of plaintiffs proposed second amended complaint states:

"By Tender Offer documents dated November 25, 1987, BA made an offer to acquire the whole of the share capital of BCG. Under the terms of the offer, most holders of BCG shares were given the option of receiving cash or, alternatively, BA shares in exchange for their BCG shares. However, this option was not available to the U.S. shareholders of BCG, consisting plaintiffs herein, since BA had not and would not register under the U.S. securities laws the new BA shares being exchanged for BCG shares. BA's failure to register this share offering under the U.S. securities laws as it had one in 1987 when BA was 'privatized' and its shares were offered to the U.S. public, caused substantial damage to the plaintiffs herein in that they were denied the option of accepting BA shares and were required to pay substantial taxes that they could have otherwise postponed."

BA's purchase of BCG's stock in 1987 has no relation to plaintiffs' claims against defendants in the first amended complaint in the instant action which allege that Vidockler was improperly removed from BCG's board of directors in 1985. BA had no relation to BCG in 1985. BA's purchase of BCG's stock in 1987 is only at issue in the instant action for the limited purpose of determining whether BCG has assets from which to pay any judgment awarded plaintiff.

Granting plaintiffs' motion to amend and supplement their complaint would involve joining BA as a party and would require separate and considerable discovery into the events of BA's purchase of BCG stock. Moreover, granting plaintiffs' motion would require adding legal issues wholly unrelated to plaintiffs' current claims. As to the legal issues supporting plaintiffs' proposed claim, plaintiffs fail to allege under what law BA was obligated to register its offering or under what law BA was required to offer plaintiffs' shares of BA in exchange for shares of BCG instead of cash. Further, plaintiffs provide no basis for their claim that they could have deferred payment of tax on the gain from the cash they received for their shares of BCG if they had been given the opportunity to receive shares of BA instead.

Granting plaintiff's motion would therefore serve only to delay the instant action and occasion extended discovery. Further, plaintiffs' proposed claim appears to be frivolous and subject to dismissal pursuant to a motion under Federal Rule of Civil Procedure 12(b)(6). Because granting plaintiffs leave to amend their complaint to add their proposed claim against BA would cause undue delay, would unduly burden BA and the defendants in the instant action, and because plaintiffs' proposed claim appears to be frivolous, plaintiffs' application under Rule 15(a) to amend their complaint falls within the instances appropriate for denial of such an application described in *Foman*. For these reasons and because

plaintiffs' proposed claim is unrelated to plaintiffs' pending claims in the instant action, plaintiffs' application under Rule 15(d) is also appropriate for denial. Accordingly, plaintiffs' motion seeking leave to amend and supplement their first amended complaint is denied.

## B. Defendants' Motion To Dismiss

Defendants have moved to dismiss plaintiffs' claims on several grounds. In the instant action, plaintiffs seek: (1) an injunction directing defendants to comply with the 1966 settlement agreement and certain other agreements between the parties which plaintiffs allege entitles them to a seat on the board of directors of BCG; (2) money damages as a result of the breach of such agreement; and (3) a declaration that the defendants were in contempt of the 1966 settlement agreement so ordered by Judge Bonsal. Plaintiffs' claims for an injunction and money damages are subject to dismissal under the doctrine of forum non conveniens and will be examined together. Plaintiffs' claim for contempt is subject to dismissal as being insufficient as a matter of law and will be examined separately.

### 1. Forum Non Conveniens

In order to establish a claim for money damages arising out of an alleged breach of the 1966 settlement agreement, or any other related agreement as alleged in the first amended complaint, plaintiffs will have to establish essentially the same elements as would be required to substantiate their claim for injunctive relief. Central to either claim is the existence of an enforceable agreement entitling the plaintiffs to representation on the board of directors of BCG and the denial of their rights under such an agreement by the board of directors of BCG. Defendants argue that plaintiffs' claims for an injunction and money damages should be dismissed under the doctrine of forum non conveniens.[1]

---

4. Plaintiffs' contend that defendants in the instant action are collaterally estopped from asserting that this action should be dismissed on the grounds of forum non conveniens because

the 1965 derivative action was kept in this Court despite a motion by defendants in that action to dismiss on the grounds of forum non conveniens. Plaintiffs' argument is unavailing, how-

■ In determining whether an action should be dismissed under the doctrine of forum non conveniens, a court must weigh the private and public factors enumerated by the Supreme Court in *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The private factors to be taken into account are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if appropriate; (5) the enforceability of a judgment if one is obtained; and (6) all other practical considerations that make trial of a case easy, expeditious, and inexpensive. *Id.* at 508, 67 S.Ct. at 843. The public factors enumerated in *Gulf Oil v. Gilbert* include the remoteness of the forum from the situs of the event and the forum court's need to rely upon foreign law. *Id.* at 508–09, 67 S.Ct. at 843; *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l*, 712 F.2d 11, 14 (2d Cir.1983).

■ A citizen or resident's choice of forum deserves more deference than that of a foreign plaintiff. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–266, 70 L.Ed.2d 419 (1981). However, dismissal is not automatically barred when a plaintiff files suit in his home forum. Rather, dismissal is proper if the weighing of the private and public factors suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court. *Id.* at 256 n. 23, 102 S.Ct. at 266 n. 23. *See Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822 (2d Cir.1990) (affirming dismissal on the ground of forum non conveniens even though plaintiff was an American corporation authorized to do business in New York); *Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l*, 712 F.2d 11 (2d Cir.1983) (same); *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963 (2d Cir.1980) (same).

■ As for the private factors, almost all documents so far requested are to be found in Britain. Except for plaintiff Vidockler, all other potential witnesses who can testify as to the existence or nonexistence of various agreements and actions alleged by plaintiff are citizens and domiciliaries of Great Britain. All of the directors and officers of BCG, with the exception of one, are domiciled in Great Britain. The majority of shareholders in BCG are British subjects. Thus, most every possible witness in the instant action is a British subject and beyond the jurisdiction of this court. Besides the difficulty of obtaining the attendance of unwilling witnesses from Great Britain, the cost and disruption of obtaining the attendance of willing witnesses for discovery and for trial would be considerable. Further, any injunction seating plaintiff Vidockler on the board of directors of BCG, which sits in Great Britain, would not be enforceable. Moreover, any damages awarded to plaintiffs would have to be remitted to legal proceedings in the British courts because none of the defendants have assets in New York upon which a money judgment could be obtained.

As for the public factors, New York has little interest in the instant action which involves the internal affairs of a Scottish corporation. Not only does New York have little interest in this controversy, but Great Britain has a substantial interest in determining the legal rights to seats on the board of directors of a Scottish corporation. Because the instant action involves a number of issues concerning the internal affairs of a foreign corporation and because "the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation," *First National City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983), British law will be applicable to a number of critical issues in the instant action.

In sum, most of the documents are in Great Britain, almost every possible witness is a British subject and beyond the

---

ever, because the instant action involves different defendants and different claims and therefore presents a different set of factors for the

determination of whether this action is appropriate for forum non conveniens than did the 1965 derivative action.

jurisdiction of this Court, any judgment of this Court would either not be enforceable in Great Britain or would require remittance to the British courts, the instant action involves a seat on the board of directors of a Scottish corporation which sits in Great Britain, and British law will apply to critical issues in the litigation. The private and public factors therefore weigh heavily in favor of dismissing this action on the ground of forum non conveniens. Accordingly, defendants' motion to dismiss plaintiffs' claims for an injunction and damages on the grounds of forum non conveniens is granted subject to defendants' agreement to continue the instant action in Great Britain.

### 2. Contempt

 The only issue which remains is plaintiffs' claim against defendants for contempt of the 1966 settlement agreement. Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate when "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When the terms of an agreement are clear and unambiguous, a court will not look beyond the "four corners" of a document to determine what the parties meant. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 581 F.Supp. 241, 243 (S.D.N.Y.1984). When the language of an agreement is unambiguous and reasonable people could not differ on its meaning, a court may decide the proper interpretation of the language in the agreement. *American Home Assurance Co. v. Baltimore Gas & Elec.*, 845 F.2d 48, 51 (2d Cir.1988).

 Plaintiffs claim defendants are in contempt of the 1966 settlement agreement which settled a derivative action commenced in this Court by plaintiffs in the instant action against CAP. The settlement agreement reads: "So long as SAI shall own stock in [CAP], [CAP] agrees to appoint an individual nominated by SAI and acceptable to [CAP] to serve as one of its Executive Directors." Based on this provision, plaintiffs claim that BCG is in con-

tempt of the court order which approved the 1966 settlement agreement.

Plaintiffs' claim is baseless, however, because the language of the settlement agreement upon which plaintiffs rely does not give plaintiffs a seat on the board of directors of BCG. Rather, the clear and unambiguous language of the agreement gives plaintiffs a seat on the board of CAP. Although CAP is a subsidiary of BCG, CAP is, and was, a separate and distinct corporate entity from BCG. No language in the settlement agreement purports to give plaintiffs a seat on the board of BCG. Defendants therefore can not be found in contempt of the 1966 settlement agreement for failure to give plaintiffs a seat on the board of directors of BCG. Thus, there is no genuine issue of material fact as to plaintiffs' contempt claim and defendants are therefore entitled to judgment on the claim as a matter of law. Accordingly, defendants' motion to dismiss plaintiffs' claim that defendants are in contempt of the 1966 settlement agreement is granted.

## III. CONCLUSION

Plaintiffs' motion pursuant to Rule 19(a)(1) and Rule 15(a) and (d) is denied. Defendants' motion to dismiss plaintiffs' contempt claim is granted and defendants motion to dismiss the remaining claims in the instant action under the doctrine of forum non conveniens is granted subject to defendants' agreement to continue the instant action in Great Britain.

SO ORDERED.