**SCOTTISH AIR INTERNATIONAL, INC. and Murray Vidockler, Plaintiffs,**

v.

**BRITISH CALEDONIAN GROUP, PLC., Adam Thomson, Dennis H. Walter, and R. Marshall Gibson, Defendants.**

**No. 85 Civ. 0341 (SWK).**

United States District Court, S.D. New York.

Nov. 10, 1994.

Beckman, Kirstein & Murphy by Robert M. Beckman, David M. Kirstein, Washington, DC, Stillman, Friedman & Shaw, P.C. by Charles A. Stillman, for plaintiffs.

Laventhall & Zicklin by Robert Zicklin, New York City, for defendants.

### *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

In this diversity action for breach of contract and contempt of this Court's May 25, 1966 Order (the "May 25 Order"), in the case of *Scottish Air Int'l, Inc. v. Thomson,* 65 Civ. 1782 (S.D.N.Y.1965), defendants now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting them

summary judgment dismissing plaintiffs' civil contempt claim. Plaintiffs oppose defendants' motion and cross-move, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, for an order permitting additional discovery before ruling on defendants' summary judgment motion. For the reasons set forth below, defendants' motion is granted and plaintiffs' motion is denied.

## BACKGROUND

The factual background of this litigation has been fully set forth by this Court in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 152 F.R.D. 18 (S.D.N.Y.1993) and *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 751 F.Supp. 1129 (S.D.N.Y.1990) and by the Second Circuit in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57 (2d Cir.1988) and *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53 (2d Cir.1991). For the purposes of this Memorandum Opinion and Order, only the relevant facts will be summarized herein.

### I. The Settlement Agreement

Plaintiff Scottish Air International, Inc. ("SAI") is a dissolved corporation formerly existing under the laws of New York State. Previously, SAI was a holding company which owned shares in defendant British Caledonian Group, PLC ("BCG"). Plaintiff Murray Vidockler ("Vidockler") was the president and majority shareholder of SAI.

In 1961, SAI provided investment capital to BCG's operating company, Caledonian Airways (Prestwick) Ltd. ("CAP"), and thus, became the sole United States shareholder of CAP. In July 1965, SAI commenced a shareholder's derivative suit against CAP and several members of its board of directors alleging improper use of corporate funds and improper issuance of shares. *See Scottish Air Int'l, Inc. v. Thomson,* 65 Civ. 1782 (S.D.N.Y.1965). In January 1966, the parties entered into a settlement agreement (the "1966 Settlement Agreement") which was ap-

proved and "So Ordered" by Judge Dudley Bonsal ("Judge Bonsal"). The 1966 Settlement Agreement provided, *inter alia,* that an individual nominated by SAI would be appointed to CAP's board of directors. Specifically, paragraph three of the 1966 Settlement Agreement stated, in pertinent part:

So long as SAI shall own stock in Caledonian, Caledonian agrees to appoint an individual nominated by SAI and acceptable to Caledonian to serve as one of its Executive Directors.

*See* the 1966 Settlement Agreement, annexed to the Affidavit of Murray Vidockler, sworn to on Jan. 19, 1994, as Exh. "1," at ¶ 3.

Plaintiffs state that the 1966 Settlement Agreement erroneously omitted a similar provision granting SAI the right to nominate a representative to the board of directors of Airways Interests (Thomson) Ltd. ("AIT"), BCG's predecessor corporate entity.[1] Consequently, after the 1966 Settlement Agreement was "So Ordered" by Judge Bonsal, the parties amended the 1966 Settlement Agreement by a series of telexes to include a provision guaranteeing SAI's right to nominate a director to the board of AIT. Thereafter, SAI designated Vidockler to serve on the boards of both CAP and AIT. From 1966 until 1985, Vidockler was consistently elected to the boards of directors of both CAP and AIT, and, after the 1970 corporate reorganization, of defendant BCG, CAP's majority shareholder.

### II. The 1985 Action and Subsequent Procedural History

In 1985, Vidockler was removed from BCG's board of directors, and advised that no further SAI representatives would be nominated to sit on the board. In response, SAI and Vidockler brought the present suit, alleging that SAI had a right to place Vidockler or another SAI representative on the BCG board. According to plaintiffs, this right stemmed from several agreements between the parties, including the 1966 Settlement Agreement. Plaintiffs sought (1) an

---

1. In 1970, a series of corporate reorganizations ensued, resulting in the creation of BCG (the "1970 corporate reorganization"). Plaintiffs allege that AIT combined with portions of CAP's managerial operations to form BCG. According to defendants, however, BCG was simply the new name given to AIT.

injunction directing the defendants to comply with the 1966 Settlement Agreement; (2) a declaration that the defendants were in contempt of the 1966 Settlement Agreement; and (3) money damages for breach of contract.

In May 1986, defendants moved to dismiss the complaint on the grounds that (1) the Court lacked personal jurisdiction over the defendants; (2) the plaintiffs failed to join all shareholders of BCG who were necessary to effect the election of Vidockler to the board of directors; (3) ordering the election of Vidockler to the board would constitute interference with the internal operations of a foreign corporation; and (4) the Court should decline jurisdiction under the doctrine of *forum non conveniens.*

Before the Court rendered a decision regarding the defendants' motion, British Airways made a successful tender offer for the shares of BCG. Plaintiffs then informed the Court that, as a result of the tender offer, BCG essentially had ceased to exist, rendering moot plaintiffs' request for injunctive relief reinstating Vidockler to BCG's board of directors.

Thereafter, on April 15, 1988, the Court dismissed this action on the grounds of *forum non conveniens,* subject to the defendants' agreement to continue the litigation in the United Kingdom (the "April 15 Order"). On October 31, 1988, the Second Circuit reversed and remanded the Court's April 15 Order, holding that the Court had failed to consider SAI and Vidockler's contempt and damages claims. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57 (2d Cir.1988) ("*Scottish Air I* "). Noting that "in dismissing plaintiffs' complaint on the basis of *forum non conveniens,* the [district] court focused exclusively on plaintiffs' prayer for an injunction reinstating Vidockler to BCG's board of directors," the Second Circuit found that the prayer for injunctive relief was moot, *id.* at 59, and that "the district court erroneously failed to consider [the plaintiffs'] remaining claims for breach of contract and for a finding of contempt of the 1966 order." *Id.*

Following remand, plaintiffs then moved, pursuant to Rule 19(a)(1) of the Federal Rules of Civil Procedure, for an order adding British Airways as an indispensable party. Plaintiffs also moved, pursuant to Rules 15(a) and (d) of the Federal Rules of Civil Procedure, to amend and supplement the complaint in order to add claims that they wrongfully were precluded from trading their shares of BCG for shares of British Airways during British Airway's tender offer for shares of BCG.

In an amended Memorandum Opinion and Order dated December 4, 1990, the Court denied plaintiffs' motion and dismissed the contempt claim pursuant to a *sua sponte* determination in favor of defendants. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 751 F.Supp. 1129 (S.D.N.Y. 1990) ("*Scottish Air II* "). The remaining claims were once again dismissed under the doctrine of *forum non conveniens,* subject to defendants' agreement to continue the litigation in the United Kingdom. The plaintiffs appealed on the grounds that (1) the district court erred in granting *sua sponte* summary judgment on the contempt claim; (2) the court abused its discretion by dismissing the case on the basis of *forum non conveniens;* and (3) the motion to add British Airways as a necessary party should be granted.

On September 23, 1991, the Second Circuit again reversed and remanded on the ground that the district court had failed to provide plaintiffs with notice and an opportunity to oppose the entry of summary judgment. *See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53 (2d Cir.1991) ("*Scottish Air III* "). Specifically, the Second Circuit determined that:

> [T]he defendants did not move for summary judgment and the plaintiffs were not provided with notice and an opportunity to oppose the entry of summary judgment.... [Thus,] [i]n light of the district court's disposition, herein via its summary judgment analysis, the failure to provide notice to the plaintiffs, and there being no suggestion in the record on appeal that the plaintiffs had adequate notice of the possibility of the entry of summary judgment, we reverse the judgment of the district court and remand for further proceedings.

*Id.* at 55 (citations omitted). The Second Circuit declined to address either the district court's application of the *forum non conveniens* factors or its determination that British Airways was not a necessary party. *Id.*

On October 28, 1992, this case was reassigned from Judge Edelstein to Judge Kram. Subsequently, defendants moved: (1) to dismiss the complaint for lack of personal jurisdiction; (2) for an order dismissing plaintiffs' contempt claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure; and (3) for reaffirmation of *Scottish Air II,* dismissing the balance of this action on the ground of *forum non conveniens* and denying plaintiffs leave to file a Second Amended Complaint and to add British Airways as a party. In response, plaintiffs moved: (1) for leave to file a Third Amended and Supplemental Complaint, pursuant to Rules 19 and 25(c) of the Federal Rules of Civil Procedure; (2) for leave to add British Airways as a necessary and indispensable party, pursuant to Federal Rules of Civil Procedure 15(a) and (d); (3) for an order rescinding Judge Edelstein's December 16, 1991 Order prohibiting further discovery; and (4) for an order adjourning consideration of defendants' motion to dismiss on the grounds that it is directed to the First Amended Complaint, and will become moot with the filing of the proposed Third Amended and Supplemental Complaint.

By Memorandum Opinion and Order dated December 6, 1993, the Court denied: (1) defendants' motion to dismiss for lack of personal jurisdiction; (2) plaintiffs' motion for leave to file a Third Amended and Supplemental Complaint; (3) plaintiffs' motion to add British Airways as a necessary and indispensable party; and (4) plaintiffs' motion to adjourn consideration of defendants' motion for summary judgment. The Court stayed defendants' motion for reaffirmation of Judge Edelstein's December 4, 1990 Amended Opinion and Order dismissing this case on the ground of *forum non conveniens* pending resolution of plaintiffs' contempt claim.

### III. The Present Action

Presently before the Court is defendants' motion for summary judgment dismissing plaintiffs' contempt claim. Plaintiffs allege that defendants violated the 1966 Settlement Agreement by failing to allow SAI to nominate an individual to serve on the board of directors of BCG after Vidockler's removal in 1985. Plaintiffs argue further that defendants' violation of the 1966 Settlement Agreement constitutes civil contempt due to the fact that the 1966 Settlement Agreement was "So Ordered" by this Court.

Defendants now argue that the 1966 Settlement Agreement does not obligate them to permit SAI to nominate a director to the board of BCG. Rather, according to defendants, the 1966 Settlement Agreement provides only that SAI be permitted to nominate an individual to the board of CAP. For the reasons that follow, defendants' motion is granted.

### DISCUSSION

### I. Standard of Law

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987); *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09; *Gallo v. Prudential Residential Serv.,* 22 F.3d 1219, 1223 (2d Cir.1994). But the Court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11; *see Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To determine whether the moving party has met his or her burden, the Court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.,* but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of summary judgment. *See, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to establish his or her burden under Rule 56. *Celotex Corp. v. Catrett,* 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

## II. Plaintiffs' Contempt Claim

Plaintiffs contend that BCG should be held in contempt for refusing to permit SAI to nominate a director to BCG's board. Plaintiffs first argue that, as the "So Ordered" 1966 Settlement Agreement was amended to give SAI the right to nominate a director to the board of AIT, the Court's consent decree should encompass this amendment. According to plaintiffs, AIT was therefore obligated to permit them to nominate a director to AIT's board. Plaintiffs argue further that, as BCG assumed the functions of AIT and CAP, the 1966 Settlement Agreement should be read to obligate BCG to allow them to nominate a member to its board as well. According to plaintiffs, BCG's refusal to allow SAI to choose a board member subjects it to a civil contempt sanction. The Court finds this argument unpersuasive.

■ "The imposition of a civil contempt order is a severe sanction subject to a higher standard of proof than the 'preponderance of the evidence' standard applicable to ordinary civil cases." *King v. Allied Vision, Ltd.,* 155 F.R.D. 440, 448 (S.D.N.Y.1994) (quoting *Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc.,* 341 F.2d 101, 102 (2d Cir.1965)). Rather, the burden of proof is a "clear and convincing" standard. *New York State Nat'l Org. For Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989). Thus, a court's inherent power to hold a party in civil contempt should be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3)

the party has not diligently attempted in a reasonable manner to comply. *Id.*

■ Consent decrees are utilized by parties "to save themselves time, expense, and inevitable risk of litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). As consent decrees are "hybrid in the sense that they are both contracts and orders, they are construed largely as contracts, but are enforced as orders." *Berger v. Heckler,* 771 F.2d 1556, 1567–68 (2d Cir.1985). Accordingly, courts should defer to the language of the consent decree, discerning its meaning "within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. at 682, 91 S.Ct. at 1757; *see also Crumpton v. Bridgeport Educ. Ass'n,* 993 F.2d 1023, 1028 (2d Cir.1993) (stating that, in interpreting a consent decree, courts are bound by the "four corners" of the document); *United States v. O'Rourke,* 943 F.2d 180, 187 (2d Cir.1991) (same); *Berger v. Heckler,* 771 F.2d at 1568 (stating that courts are "not entitled to expand or contract the agreement of the parties as set forth in the consent decree").

■ While BCG may be held in contempt for violating a consent decree entered into by itself and another party, the Court finds that BCG may not be held in contempt for violating the 1966 Settlement Agreement in the present case. In fact, the 1966 Settlement Agreement, as "So Ordered" by this Court, requires only that SAI be permitted to nominate a member to the board of CAP. Although parties are free to modify their agreements, the Court will not hold a party in contempt for failing to abide by an agreement that was made subsequent to the entering of the Court's consent decree. A finding of civil contempt is a serious sanction and is inappropriate in the context of supplemental agreements to which the Court is not privy.

■ Moreover, even if the Court were to determine that the amendment to the 1966 Settlement Agreement, permitting SAI to nominate a board member of AIT, falls within the scope of the consent decree, the Court finds that the consent decree as amended

does not give SAI the right to nominate a member to the board of BCG.

Plaintiffs maintain that, as BCG assumed functions that previously had been fulfilled by both AIT and CAP prior to the 1970 corporate reorganization, BCG must now permit SAI to nominate a board member. The Court disagrees. The Court will not inquire beyond the obvious language agreed to by the parties or hold defendants accountable for plaintiffs' hidden intent in executing the 1966 Settlement Agreement. *See United States v. Int'l Bhd. of Teamsters,* 899 F.2d 143, 146 (2d Cir.1990) (stating that "[a]n unclear order provides insufficient notice to justify a sanction as harsh as contempt"). While the 1966 Settlement Agreement as amended permits plaintiffs to nominate a director to the boards of CAP and AIT, it does not provide for nomination to the boards of successive corporate entities. As CAP, AIT and BCG are separate and distinct enterprises, BCG is not obligated to permit SAI to nominate a director to its board absent language in the 1966 Settlement Agreement allowing for nomination to the boards of future distinct corporate bodies. Accordingly, the Court finds that plaintiffs have failed to present clear and convincing evidence that defendants violated the Court's consent decree by refusing to allow plaintiffs to appoint a member of BCG's board of directors.

Moreover, the Court finds that further discovery is unnecessary to the disposition of plaintiffs' civil contempt claim. Plaintiffs argue that additional discovery may shed light on the parties' underlying intentions and the meanings of certain terms, such as "CAP," in the 1966 Settlement Agreement. Plaintiffs' position is without merit. While it is true that the Court applies standard principles of contract interpretation in construing a consent decree, including examining the technical meaning of words and surrounding circumstances, such an analysis would not aid plaintiffs in the present case. "Extrinsic evidence ... may generally be considered only if the terms of the [document] are ambiguous." *S.E.C. v. Levine,* 881 F.2d 1165, 1179 (2d Cir.1989). Here, the 1966 Settlement Agreement is unambiguous in conferring

upon SAI the right to nominate a director only to the board of CAP. The Court will not examine outside circumstances to provide new meaning to the clear terms of the 1966 Settlement Agreement.

## CONCLUSION

For the reasons set forth above, defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing plaintiffs' contempt claim is granted. Plaintiffs' cross-motion, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, for an order permitting additional discovery before ruling on defendants' motion is denied. The parties are directed to brief defendants' motion to reinstate Judge Edelstein's December 4, 1990 Amended Opinion and Order dismissing the case on the ground of *forum non conveniens* pursuant to the following schedule: (1) defendants' motion papers are due on December 9, 1994; (2) plaintiffs' opposition papers are due on December 23, 1994; and (3) defendants' reply papers are due on December 30, 1994.

SO ORDERED.