**Vincent TREROTOLA, Plaintiff,**

v.

**LOCAL 72 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS and Local 858 of the International Brotherhood of Teamsters, Defendants.**

No. 96 Civ. 0555 (DNE).

United States District Court, S.D. New York.

March 20, 1997.

Phillip C. Landrigan, White Plains, N.Y., for plaintiff.

Cohen, Weiss & Simon, New York City (Susan Davis, Earl R. Pfeffer, and Owen M. Rumelt, of counsel), for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge.

Presently before this Court are cross-motions for summary judgment. For the following reasons, both motions are denied without prejudice.

## BACKGROUND

This case involves a claim by plaintiff Vincent Trerotola ("plaintiff" of "Trerotola"), the former principal officer and Secretary–Treasurer of Locals 72 and 858 of the International Brotherhood of Teamsters ("Local 72" and "Local 858") ("the Locals"), for benefits allegedly owed to him under two pensions plans controlled by the Locals. (Memorandum of Law in Opposition to Plaintiff's Motion For Summary Judgment and/or in Support of Defendants' Cross–Motion for Summary Judgment, *Trerotola v. Local 72 of the Int'l Bhd. of Teamsters*, 96 Civ. 0555 ("Dfts.Memo") at 3 (Mar. 21, 1996).) In addition to his positions as principal officer and Secretary–Treasurer of the Locals, plaintiff was also a salaried IBT representative from 1972 until August 1990, a salaried Administrative Assistant to the Chairman of the Eastern Conference of Teamsters (the "Eastern Conference") from 1971 until December 1993, and a salaried Office Manager

of Joint Council 16 in New York City from 1969 until 1993. *Id.*

On December 8, 1994, the Independent Review Board for the IBT ("IRB") referred charges against plaintiff to IBT General president Ronald Carey ("Carey"). *Id.* at 4. The IRB determined that the evidence obtained through an investigation of plaintiff supported charges that he had breached his fiduciary duty to the Locals by embezzling money ·from them, as well as from Joint Council 16 and the Eastern Conference. *Id.* Moreover, the IRB found that plaintiff's embezzlement brought reproach upon the IBT in violation of Article II, Section 2(a) and Article XIX, Section 7(b)(1), (2) and (3) of the IBT Constitution. *Id.* Specifically, the IRB determined that plaintiff had caused the Locals to pay him excess salary in the form of reimbursements for FICA payroll deductions without disclosure to the Locals' members or approval from the Locals' Executive Boards, and without informing them that plaintiff had received FICA reimbursements from the IBT. *Id.* The IRB found that plaintiff's scheme resulted in his embezzling $11, 889.31 from Local 72, and $19,304.19 from Local 858. *Id.*

Under the terms of the. Consent Decree, the IRB's recommended charges against plaintiff were referred to General President Carey for further action. *Id.* at 6–7. Pursuant to Article XIX of the IBT Constitution, Carey .appointed a hearing panel to hear the charges. *Id.* at 7. A hearing was held on March 2, 1995, and on July 29, 1995, the panel issued its findings and recommendations regarding the charges. *Id.* On the basis of the hearing evidence, including plaintiff's own testimony, the panel concluded "that Trerotola acted with the fraudulent intent to embezzle monies from[,] and breached his fiduciary duties to[,] Locals 72 and 858." *Id.* The panel's recommendations included the following terms: (1) that plaintiff be suspended from membership and his positions in the Locals for twelve months; (2) that plaintiff reimburse Local 72 $11,889.31 and Local 858 $19,304.19; and (3) that plaintiff repay any of his legal fees which were paid by either Local in connection with the IRB investigation, if any. *Id.*

Upon reviewing the panel's findings and recommendations, Carey concurred with most of them. *Id.* at 7–8. However, Carey found that a one-year suspension was insufficient, and thus increased plaintiff's suspension to two years. *Id.* at 8. The IRB affirmed the sanctions imposed by Carey, and further determined that plaintiff's embezzlement scheme extended to monies he received from Joint Council 16 and the Eastern Conference. *Id.*

Following plaintiff's removal as Local 72's principal officer and Secretary–Treasurer, the General President placed Local 72 in trusteeship and appointed Joseph Padellaro ("Padellaro") as its Temporary Trustee. *Id.* As part of his authority under the IBT Constitution "to take full charge of the affairs" of Local 72, Padellaro conducted a complete review of the Local's finances, including hiring an independent auditor to investigate the Local. *Id.* That investigation revealed that plaintiff caused Local 72 to pay $18,580.27 toward plaintiff's legal fees incurred during the IRB investigation. *Id.* at 8–9. The auditor's investigation further uncovered a scheme by plaintiff to cause Local 72 to pay as much as 90% towards the purchase price of automobiles for plaintiff's benefits. *Id.* at 9. Plaintiff's scheme, which he perpetrated from 1986 to 1994, was to structure Local 72's car leases with unusually large monthly lease payments. *Id.* While such lease payments are fiscally sound if the lessee intends to purchase the car at the end of the lease term, Local 72 never exercised its purchase option on any of the cars it leased. *Id.* Instead, on at least three separate occasions, plaintiff personally exercised Local 72's purchase option without the approval of the Executive Board or general membership, and without paying Local 72 for the option. *Id.* The effect of this scheme was that Local 72 subsidized a steady supply of cars—high-end automobiles, such as a 1986 Mercury Cougar, a 1993 Lincoln Town Car, and a 1993 Mercury Cougar XR7—for plaintiff's personal use. *Id.* at 9–11.

The case at bar involves plaintiff's claim that he is entitled to · benefits under two pension plans administered by the Locals,. despite his substantial embezzlement from

them. The pensions plans at issue are the Local 72 Executive Pension Plan (the "Local 72 Plan") and the Local 858 Executive Pension Plan (the "Local 858 Plan") (the "Local Plans"). *Id.* Each party has moved for summary judgment, and the instant Opinion and Order resolves both of those motions.

## DISCUSSION

Before considering the merits of the parties' respective motions for summary judgment, this Court will set forth the standard governing those motions.

### I. Summary Judgment Standard

Pursuant to Rule 56, summary judgement is appropriate where "the pleadings, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case on an issue which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). As the Second Circuit has noted, "[i]t has long been the rule that on summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion." *Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1112 (2d Cir.1992) (quotation omitted).

To defeat a motion for summary judgment, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587,

106 S.Ct. at 1356. If the adverse party does not respond to the motion for summary judgement, "summary judgement, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

In considering a motion for summary judgment, a court is not to resolve contested issues of fact, but rather, it is to determine the existence of any disputed issues of material fact. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The existence of a genuine issue of material fact depends on both the genuineness and the materiality of the issues raised by the motion. *See Scottish Air Int'l, Inc. v. British Caledonian Group*, 867 F.Supp. 262, 266 (S.D.N.Y.1994), *aff'd*, 81 F.3d 1224 (2d Cir.1996). Indeed, "the mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). To evaluate a fact's materiality, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While "disputes over facts that might affect the outcome of a suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citations omitted); *see Knight*, 804 F.2d at 11–12. According to the Supreme Court, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a judge or jury to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (quotation omitted). Nevertheless, "courts should not be reluctant to grant summary judgment in appropriate cases." *A.F.L. Falck S.p.A. v. E.A. Karay Co., Inc.*, 722 F.Supp. 12, 15 (S.D.N.Y.1989). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually insupportable claims," *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53, thereby permitting courts to avoid "protracted, expensive

and harassing trials." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.) *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

## II. The Parties' Cross–Motions for Summary Judgment

Plaintiff moves for summary judgment, while defendants oppose plaintiff's motion, and cross-move for summary judgment. In support of their respective motions, the parties advocate opposing sides of the same two arguments. First, plaintiff contends that the adoption of both of the Local Plans was approved by the Locals' respective memberships in accordance with the Locals' long-standing procedures, (*Trerotola v. Local 72 of the Int'l Bhd of Teamsters,* 95 Civ. 0555 ("Pltf.Memo") at 13 (Mar. 4, 1996), while defendants maintain that neither plan was validly approved by either Locals' general membership. (Dfts. Memo at 19–20.) Second, plaintiff asserts that, according to the Local Plans' express language, plaintiff's benefits under the Local Plans are "nonforfeitable," and thus, cannot be lost by plaintiff's misconduct, (Pltf. Memo at 8–12), while defendants counter that, even if the Local Plans were validly adopted, they were forfeited by plaintiffs' "breaching his fiduciary duties to the Locals, and, thereby, to the [Local] [P]lans." (Dfts. Memo at 14.)

Each of these arguments is potentially dispositive of the instant motions. With respect to the first argument, if this Court finds that the Local Plans were properly adopted and approved, then it may consider the parties' second argument. If, on the other hand, this Court finds that the Local Plans were not properly adopted and approved, then summary judgment must be granted to defendants. There is, of course, at least one more possibility with respect to the parties' first argument—that neither party has persuasively made its case, and that, consequently, this Court is unable definitively to determine whether the Local Plans were (or were not) properly adopted and approved. It is this last outcome which this Court finds to be the case.

Plaintiff asserts that "[t]he adoption of both plans in this case was persuant [sic] to a resolution drafted by defendants' current counsel and submitted for approval in the normal course of the locals' business to the membership which also approved the adoption of the plans." (Pltf. Memo at 13.) Specifically, plaintiff contends that "[s]ubstantially identical resolutions adopting the [Local] Plans were unanimously passed by each locals' Executive Board," and that "[t]he Executive Board minutes of both locals were read and approved by the unanimous vote of each board at their next regularly scheduled meeting." *Id.* Plaintiff further claims that "[i]t was, until September 1995, the long-standing practice of each local to submit all actions of the Executive Board to the [g]eneral membership for approval[,] and th[at] practice was strictly followed with regard to the adoption of the [Local] Plans." *Id.* According to plaintiff, this method of general membership approval was valid because the IBT Constitution "clearly recognizes the establishment of powers and authority of the union to act in accordance with its own long[-]standing practices." *Id.* at 13–14.

In opposition to plaintiff's motion for summary judgment, and in support of their own cross-motion for summary judgment, defendants argue that neither of the Local Plans were validly adopted by the locals' general memberships. With respect to Local 72, defendants assert that "it is incontrovertible that Local 72 did not submit the Local 72 Plan to the general membership for approval." (Dfts. Memo at 19.) Defendants assert that the minutes of the general membership meetings at which the Local 72 pension plan was allegedly adopted "clearly do not reflect the presentation of the Local 72 Plan to the general membership for approval," and furthermore, "establish beyond cavil that the Local 72 Plan was not read, was not discussed[,] and was not placed before the assembled members for approval or rejection." *Id.* at 19–20. As for Local 858, defendants contend that "[n]either the Local 858 Plan nor the resolution adopting the Local 858 Plan (the 'Resolution') were read to the [g]eneral [m]embership at either of the Local's two membership meetings following the February 11, 1988 vote of the Executive Board, and there is no evidence that the assembled membership was ever provided

copies of either the Resolution or the Plan itself." *Id.* at 20 (internal citation omitted).

In opposition to defendants' cross-motion, plaintiff again asserts that "[i]t was the regular and longstanding practice of the Executive Boards of both local 858 and Local 72 to meet and conduct business immediately prior to the general membership meetings." (*Trerotola v. Local 72 of the Int'l Bhd. of Teamsters,* 95 Civ. 0555 ("Pltf.Opp.Memo") at 2 (April 1, 1996).) Plaintiff explains that the procedure for Local 72 and 858 general membership approval of their Executive Board resolutions was the following:

> The Local 72 and 858 Executive Board minutes for every meeting of the Executive Board were in fact read at each division's meeting of the general membership of the respective Locals. At each of those meetings, after the Executive Board minutes were read to the membership, the floor was open for questions and discussion of the actions taken or proposed to be taken by the Executive Board. After discussion of any and all issues raised by the membership, a motion was made and seconded to accept or approve the Executive Board actions as reflected in the minutes of its meetings. The vote of the general membership was taken and recorded in the minutes of the general membership meetings.

*Id.* Plaintiff maintains that the Locals adhered to this procedure with respect to their general memberships' adoption of the Local Plans. *Id.* at 2–3. Plaintiff argues that "[t]he resolution of the Executive Boards adopting the [Local Plans] were read, discussed and explained to the members' satisfaction during the next regular general membership meeting and were accepted unanimously by the membership." *Id.* Moreover, according to plaintiff, "[t]he actual plan was available to any member who asked to see it at the general membership meeting and was also available at anytime from the records of Local 72 and Local 858." *Id.* at 3–4.

In view of the parties' conflicting positions on this issue, this Court is unable to determine whether the general memberships of Locals 72 and 858 validly adopted the Local Plans. The parties' disagreement over this issue appears to stem from their failure to set forth the official procedure by which the general memberships of these two Locals ratify actions of their respective Executive Boards. Although plaintiff cites to Article XXII, Section 3(b) of the IBT Constitution as authority for local unions to "act in accordance with [their] own long[-]standing practices," (Pltf. Memo at 13–14), that provision pertains solely to the terms of office of officers of a local union which is released from trusteeship. *See* IBT Const. Art. XXII, § 3(b). As such, it offers no authority to support the proposition for which plaintiff cites it.

The parties' failure to ground their arguments in a procedure governing the Locals' adoption of their respective Executive Boards' actions allows each party to argue that the same set of facts proves its case: Plaintiff claims that reading the minutes from the Executive Board meeting at the Locals' general membership meetings and the memberships' acceptance of those minutes constitutes valid membership adoption, while defendants steadfastly maintain that this procedure was insufficient to adopt the Local Plans. Without knowing the procedures by which the general memberships of Locals 72 and 858 adopt their respective Executive Boards' actions, this Court is without a standard by which to judge the validity of the Locals' adoption of the Local Plans. As a result, this Court finds that neither party has carried its burden on summary judgement—establishing the absence of a genuine issue of material fact, *see* Fed. R.Civ.P. 56(c)—with respect to the adoption of the Local Plans. Accordingly, this Court finds that each party's motion for summary judgment should be denied without prejudice. If the parties are able to come forward with the evidence and procedures by which this Court can make these determinations, they are free to do so. Finally, because plaintiff has not established that the Local Plans were validly adopted, this Court finds no reason to reach the parties' second argument regarding whether plaintiff forfeited his entitlement to benefits under the Local Plans.

*CONCLUSION*

IT IS HEREBY ORDERED THAT plaintiff's motion for summary judgment is DENIED without prejudice.

IT IS FURTHER ORDERED THAT defendants' cross-motion for summary judgment is DENIED without prejudice.

SO ORDERED.