**SCOTTISH AIR INTERNATIONAL, INC. and Murray Vidockler, Plaintiffs–Appellants,**

v.

**BRITISH CALEDONIAN GROUP, PLC, Adam Thomson, Dennis H. Walter, and R. Marshall Gibson, Defendants–Appellees.**

No. 457, Docket 95–7398.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1995.

Decided April 25, 1996.

---

Robert M. Beckman, Washington, D.C. (David M. Kirstein, Beckman & Kirstein, Washington, D.C.; Charles A. Stillman, Stillman, Friedman & Shaw, P.C., New York City, of counsel), for Plaintiffs–Appellants.

Leonard N. Bebchick, Washington, D.C. (Robert Zicklin, Laventhall & Zicklin, New York City, of counsel), for Defendants–Appellees.

Before: CARDAMONE, MAHONEY, and WALKER, Circuit Judges.

CARDAMONE, Circuit Judge:

The diversity action before us on this appeal has wended its way through the federal court system for 11 years, having been before us twice, once in 1988 and again in 1991, and before the district court three times. It was commenced in 1985 by plaintiffs Scottish Air International, Inc. (a dissolved New York corporation) and Murray Vidockler against British Caledonian Group plc, a Scottish public limited company, and three British subjects who are among that company's former directors.

Plaintiffs appeal from a judgment entered in the United States District Court for the Southern District of New York (Kram, J.) dismissing their action on *forum non conveniens* grounds. Plaintiffs also appeal from the district court's order granting summary judgment to defendants with respect to plaintiffs' claim that defendants are in contempt of a district court order embodying a settlement agreement between the parties and others. In deciding where a trial should be held the central notions of the doctrine of *forum non conveniens* are the convenience of the parties and their witnesses and that justice be served. In affirming the district court's dismissal under that doctrine and bringing the long odyssey of this case to an end, we believe those notions have been furthered.

The facts underlying this litigation have already been detailed in *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57, 57–59 (2d Cir.1988) (*Scottish Air I* ), and *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 945 F.2d 53, 54 (2d Cir. 1991) (*Scottish Air III* ). See also *Scottish Air Int'l, Inc. v. British Caledonian Group, plc,* 751 F.Supp. 1129, 1131–32 (S.D.N.Y. 1990) (*Scottish Air II* ); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 152 F.R.D. 18, 20–22 (S.D.N.Y.1993) (*Scottish Air IV* ); *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 867 F.Supp. 262, 263–65 (S.D.N.Y.1994) (*Scottish Air V* ). Although familiarity with these prior decisions is assumed, we summarize those facts necessary to explain our decision to affirm.

## BACKGROUND

### A. *Organizing An Airline*

In 1961 a group of Scottish investors, including defendants Adam Thomson and Dennis H. Walter, organized Caledonian Airways (Prestwick) Ltd. ("Caledonian Air") under the laws of Scotland. Their goal was to operate a worldwide charter airline service. The same group of Scottish investors formed a company called Airline Interests (Thomson) Ltd. ("Airline Interests") as a holding company for the shares of Caledonian Air. At the same time, a group of American investors, which included plaintiff Murray Vidock-

ler, contributed equity capital to Caledonian Air through the vehicle of a newly-formed New York corporation, of which Vidockler was the principal shareholder, called Scottish Air International, Inc. ("Scottish Air"). As a result, the shares in Caledonian Air, the operator of the charter service, were controlled by the American investors via Scottish Air and by the Scottish investors via Airline Interests.

A few years after getting this charter air service off the ground, Scottish Air's role in managing the enterprise came into dispute. In 1965 trouble arose between Scottish Air's shareholders and the principals of Caledonian Air and Airline Interests. Scottish Air brought a shareholder derivative suit in New York State Supreme Court (New York County) against Caledonian Air and several of its directors. Following the removal of the action to the United States District Court for the Southern District of New York, Scottish Air agreed to the dismissal of the action under the terms of a settlement agreement. The settlement—signed on January 28, 1966 by Vidockler as president of Scottish Air and by Thomson on behalf of Airline Interests, Caledonian Air, and its other directors—provided that Caledonian Air must appoint an individual nominated by Scottish Air to sit on Caledonian Air's board of directors for as long as the former held shares in the latter. *See Scottish Air V*, 867 F.Supp. at 263. The agreement was to be construed according to New York law, except that Scottish law would govern "the performance of any corporate actions required of either [Caledonian Air] or [Airline Interests]." In an order dated May 25, 1966, the district court (Bonsal, J.) incorporated the settlement agreement and ordered its implementation.

Four years later, Airline Interests acquired British United Airways Ltd., a regular-service airline. In an October 9, 1970 letter to Caledonian Air shareholders, Thomson explained that the acquisition was to be accompanied by a corporate restructuring to avoid unfavorable tax consequences for the holders of Airline Interests shares. Under the reorganization, Caledonian Air shareholders—including Scottish Air—relinquished their Caledonian Air shares in ex-

change for shares in Airline Interests. Thus, Scottish Air continued to have a stake in the charter and regular-service airline businesses, but no longer directly controlled any of the shares in Caledonian Air; all of the stock it held was now Airline Interests stock. Vidockler held a seat on Caledonian Air's board of directors until the 1970 reorganization. In addition, although the 1966 settlement agreement did not guarantee Vidockler or any Scottish Air designee a seat on the board of directors of the holding company, Vidockler also held a seat on the Airline Interests board until 1985.

In 1984 Airline Interests was renamed Caledonian Aviation Group plc ("Caledonian Aviation"). The board of Caledonian Aviation passed a resolution mandating retirement of its directors at age 65. Vidockler was informed that he would not be nominated for another term. Vidockler—then age 65—refused to step down voluntarily. The shareholders of Caledonian Aviation ousted him in 1986. While this election was pending, Vidockler and Scottish Air instituted the instant lawsuit in the Southern District of New York, seeking a declaration that Caledonian Aviation was in contempt of Judge Bonsal's May 25, 1966 order and that Scottish Air was entitled to a representative on Caledonian Aviation's board. Plaintiffs also sought damages for breach of the settlement agreement.

Lengthy legal proceedings ensued, following which plaintiffs' original counsel withdrew from the case. In 1986 Caledonian Aviation once again changed its name, this time to British Caledonian Group plc ("British Caledonian"). Plaintiffs subsequently filed an amended complaint alleging that defendants had breached other agreements in addition to the 1966 settlement agreement. The amended complaint included new allegations: that the parties had agreed in 1966 that Scottish Air would be represented on the Airline Interests board as well as the board of Caledonian Air, the latter of which, of course, was provided in the settlement agreement; that the parties agreed in 1970, at the time of the corporate restructuring, that Scottish Air's right to a seat on the board of Caledonian Air would thereafter

apply to the board of Airline Interests, which is now named British Caledonian; and that the individual defendants had conspired to oust Vidockler from British Caledonian's board.

## B. History of Prior Proceedings

On April 15, 1988 the district court (Edelstein, J.) ordered the dismissal of plaintiffs' action under the doctrine of *forum non conveniens.* On appeal we remanded the case to the district court, reasoning that it had failed to consider plaintiffs' contempt and breach-of-contract causes of action and instead had focused exclusively on plaintiffs' claim for injunctive relief. *See Scottish Air I,* 860 F.2d at 59–60. We noted in particular that British Airways had recently acquired British Caledonian by acquiring the stock of the individual Scottish defendants and others, a development which, according to the plaintiffs, had rendered their claim for injunctive relief moot. *Id.* at 58.

On remand, Judge Edelstein denied plaintiffs' motions to amend their complaint and to join British Airways as a necessary party. *Scottish Air II,* 751 F.Supp. at 1134. He granted summary judgment dismissing the contempt claim and again dismissed the remaining claims on *forum non conveniens* grounds. *Id.* at 1134–36. With respect to the latter issue, the district court emphasized the following factors: virtually all the potential witnesses and the documents requested by plaintiffs were located in Great Britain; relief entitling Vidockler to a seat on British Caledonian's board would be unenforceable because it sits in Great Britain; any money judgment would be enforceable only in that country because of the location of defendants' assets; New York (unlike Great Britain) had little interest in the litigation, and British law would apply to the critical issues in the case. *Id.* at 1135–36.

When plaintiffs appealed, we once again were forced to remand because the district court had not given plaintiffs the notice required before granting summary judgment to defendants under Fed.R.Civ.P. 56(c). *See Scottish Air III,* 945 F.2d at 55. Judgment was reserved on the contempt and *forum non conveniens* rulings. On remand, the

case was reassigned to U.S. District Judge Kram. Defendants moved for summary judgment with respect to the contempt claim and for reaffirmation of Judge Edelstein's dismissal on *forum non conveniens* grounds; plaintiffs moved, as they had previously, to amend their complaint and to join British Airways as a party. *See Scottish Air IV,* 152 F.R.D. at 22. The district court denied plaintiffs' motions, *id.* at 27, 31, and subsequently granted partial summary judgment on the ground that while the 1966 settlement agreement entitled Scottish Air to a seat on the board of Caledonian Air, it did not entitle it to one on the board of defendant British Caledonian. *Scottish Air V,* 867 F.Supp. at 267–68. The district court thought, in addition, that there was no entitlement to a seat on British Caledonian's board even if plaintiffs had a right to a seat on the board of Airline Interests, because these corporations are separate and distinct enterprises. *Id.* at 267.

In an order dated March 22, 1995 Judge Kram dismissed the remainder of the action on the basis of the *forum non conveniens* doctrine, for the reasons set forth in *Scottish Air IV,* 152 F.R.D. at 31–32, and in Judge Edelstein's opinion on that issue in *Scottish Air II,* 751 F.Supp. at 1134–36. Plaintiffs appeal this ruling as well as the decision in *Scottish Air V* to grant summary judgment dismissing the contempt claim.

## ANALYSIS

### I Contempt of the 1966 Order— Summary Judgment

We turn first to Judge Kram's grant of summary judgment dismissing plaintiffs' contempt of court cause of action. Plaintiffs assert that for denying Scottish Air the right to a representative on the board of directors of British Caledonian, defendants should be held in contempt of Judge Bonsal's May 25, 1966 order, which incorporated the settlement agreement between Vidockler, Thomson, and others. In response, defendants correctly point out that the settlement agreement entitles Scottish Air to representation on the board of Caledonian Air, not British Caledonian. Plaintiffs argue, however, that

Caledonian Air and British Caledonian are not distinct corporate entities, as Judge Kram thought, and that in granting summary judgment critical issues of fact were ignored with respect to the contempt claim.

 To be entitled to summary judgment, the moving party must demonstrate that there is no genuine issue of material fact for trial and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the non-movant bears the ultimate burden of proof at trial, the moving party can satisfy its burden by pointing out that evidence needed to support an essential element of the non-moving party's burden of proof is absent. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. We review the grant of summary judgment *de novo,* examining the evidence in a light most favorable to the non-moving party, here the plaintiffs.

 In his May 25, 1966 order dismissing the shareholder derivative action, Judge Bonsal ordered the effectuation of the settlement between the parties in accordance with the terms of the January 28, 1966 settlement agreement. The terms of the settlement were incorporated into the order, so that breaching the agreement would at the same time violate the order. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* —— U.S. ——, ——, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994). Because consent decrees and orders have many of the attributes of ordinary contracts, they are construed using the familiar aids of contract interpretation. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975). When necessary, such aids as "the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree" may be relied upon. *ITT Continental Baking,* 420 U.S. at 238, 95 S.Ct. at 935. The compass of a settlement agreement must be found within its four corners "and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour &*

*Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971).

To support their assertion that material questions of fact precluding the grant of summary judgment for defendants exist, plaintiffs cite several portions of a January 19, 1994 affidavit of plaintiff Murray Vidockler. First, they maintain that "a key provision in this [1966] settlement from the perspective of [Scottish Air] was the recognition of [Scottish Air's] right to have a director with executive responsibilities on the board of the joint venture airline" and that this right is set forth in the settlement agreement. Second, plaintiffs contend, the 1970 corporate reorganization involved the transfer of Caledonian Air's management functions to Airline Interests (the entity that is now British Caledonian); all of Caledonian Air's directors became directors of Airline Interests and all its shareholders became shareholders of Airline Interests. Third, plaintiffs insist that Thomson acknowledged in 1970 that Scottish Air's right under the 1966 settlement agreement "continued, unaffected by the corporate reorganization, except that the corporate entity to which the right applied was [British Caledonian]."

Defendants have amply demonstrated that there is no evidence to support the claim that their conduct was in contempt of Judge Bonsal's order. Caledonian Air and Airline Interests (now called British Caledonian) were both in existence when the settlement agreement was signed, and both were parties to the agreement. The agreement simply gives Scottish Air the right to a seat on the board of "Caledonian," which it clearly defines as "Caledonian Airways (Prestwick), Ltd." Plaintiffs' evidence shows that the parties were aware of the possibility of giving Scottish Air a seat on Airline Interests' board as well—Vidockler cites an exchange of telexes in February 1966 in which he asked Thomson to confirm an understanding that "[Scottish Air] will have [a] director on [Airline Interests'] *as well as* Caledonian['s] board" (emphasis added). The settlement agreement, however, gave Scottish Air a seat only on Caledonian Air's board, not on Airline Interests' board.

Plaintiffs maintain that giving Scottish Air the right to representation on the board "of the joint venture airline"—not a right limited to the board of Caledonian Air—was a crucial provision from their perspective. In *Armour & Co.* the government advanced a similar contention: that a consent decree had been interpreted so as to frustrate the government's original purposes in instituting the underlying litigation. 402 U.S. at 680–81, 91 S.Ct. at 1756–57. Yet, this argument was not accepted because parties enter consent decrees only "after careful negotiation has produced agreement on their precise terms." *Id.* at 681, 91 S.Ct. at 1757. The resulting decree contains "as much of [the parties'] opposing purposes as the respective parties have the bargaining power and skill to achieve." *Id.* at 681–82, 91 S.Ct. at 1757. As earlier noted, its scope is ascertained with reference to what is within the four corners of the agreement, not to the purposes of one of the parties. *Id.* at 682, 91 S.Ct. at 1757.

■ Hence, Vidockler's statement that representation on the board of the "joint venture airline" was one of Scottish Air's—his New York corporation's—primary purposes in entering the 1966 agreement is not material to the issue of contempt. The settlement agreement that plaintiffs negotiated included no such provision, and the district court properly refused to amend the agreement by supplying it. *Cf. Hughes v. United States,* 342 U.S. 353, 357, 72 S.Ct. 306, 308, 96 L.Ed. 394 (1952) (regardless of present or future justification for new terms, reading an additional requirement into consent decree was unsupported). Plaintiffs' subjective understanding of the terms of the agreement is not material. *See Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151, 157, 468 N.Y.S.2d 649 (2d Dep't 1983) (subjective intent of one of the parties is irrelevant). And, although it is conceivable that the parties intended a special meaning for the words "Caledonian Airways (Prestwick), Ltd.," no evidence was presented supporting the existence of any such meaning.

Vidockler's declaration that management functions were transferred from Caledonian Air to its holding company Airline Interests during the 1970 corporate reorganization is also immaterial. The settlement agreement gave Scottish Air the right to a seat on Caledonian Air's board, not on the board of any entity that would later assume responsibility for its operations. In addition, the parties to the 1966 agreement chose not to include a "successors and assigns" provision. Nothing in the record shows that the termination of Caledonian Air's operations was designed to evade defendants' obligations. Instead, Vidockler's affidavit and other documents submitted to the district court themselves suggest that the 1970 reorganization was prompted by tax concerns.

Moreover, the assertion that Thomson made assurances in 1970 that Scottish Air's right to a seat on Caledonian Air's board would apply to Airline Interests is not pertinent. Such an event occurring four years after Judge Bonsal's May 25, 1966 order could not effectively modify it. Even had Vidockler's ouster from British Caledonian's board in 1984 constituted a violation of an agreement reached in 1970, there would be no basis for finding that defendants acted in contempt of the 1966 order. Under the terms of the settlement agreement, Scottish Air's right to a seat on Caledonian Air's board expired in 1970 when the former relinquished all its shares in the latter. Any subsequent promise by Thomson that Scottish Air would be represented on the board of a different entity is distinct from the 1966 order incorporating the settlement. *See United States v. American Cyanamid Co.,* 719 F.2d 558, 565 (2d Cir.1983), *cert. denied,* 465 U.S. 1101, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984) (modification of consent decree requires court approval). For these reasons, the district court properly granted summary judgment dismissing plaintiffs' contempt cause of action.

## II Forum Non Conveniens

### A. *In General*

If plaintiffs' claim of contempt were viable, the Southern District of New York might well have been a convenient forum for this litigation. *Cf. Scottish Air IV,* 152 F.R.D. at 32 (noting relationship between the contempt and *forum non conveniens* issues). But in light of our rejection of the contention that

defendants violated Judge Bonsal's May 25, 1966 order, we must pass to a review of the district court's dismissal of the remainder of the plaintiffs' action on *forum non conveniens* grounds.

A decision to grant or deny a motion to dismiss a cause of action under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been clearly abused. *See Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.,* 712 F.2d 11, 14 (2d Cir.1983). Because of the broad authority possessed by the district court, *see Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir.1978), our review in this area of the law is quite constrained. *See Borden, Inc. v. Meiji Milk Prods. Co.,* 919 F.2d 822, 827 (2d Cir.1990), *cert. denied,* 500 U.S. 953, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991).

Under the *forum non conveniens* doctrine, a district court may dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) (quoting *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947)). The discretionary power to dismiss under this doctrine exists even when the district court has jurisdiction and venue has properly been laid before it. *Id.*

Several private and public interest factors must be weighed in deciding a *forum non conveniens* motion. The factors, set forth by Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), include these private interest considerations: "the relative ease of access to sources of proof"; the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; and "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 508, 67 S.Ct. at 843. "[Q]uestions as to the enforc[ea]bility of a judgment if one is obtained" may also exist. *Id.* Public interest factors include administrative difficulties stemming from court congestion, the undesirability of imposing jury duty "upon the people of a community which has no relation to the litigation"; the "local interest in having localized controversies decided at home"; and the appropriateness of holding the trial in a forum that is "at home" with the applicable law, "rather than having a court ... untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508–09, 67 S.Ct. at 843.

A plaintiff's choice of forum should not lightly be disturbed. *See Piper Aircraft,* 454 U.S. at 241, 102 S.Ct. at 258. Although this caveat applies with greater force when plaintiff has chosen its home forum, *id.* at 255–56, 102 S.Ct. at 265–66, under certain circumstances an American plaintiff may be required to litigate abroad, *see, e.g., Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001–02 (2d Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993); *Borden,* 919 F.2d at 828; *Overseas Nat'l Airways,* 712 F.2d at 13–14; *cf. Koster,* 330 U.S. at 531–32, 67 S.Ct. at 835–36 (requiring New York plaintiff in derivative action to litigate in Illinois was not an abuse of discretion). Hence, although a citizen plaintiff's choice of forum deserves considerable deference, it is not automatically dispositive in determining a *forum non conveniens* motion. *See Overseas Nat'l Airways,* 712 F.2d at 14.

**B.** *Private Interest Factors*

In *Scottish Air II,* Judge Edelstein evaluated the private and public interest factors and found them weighted heavily in favor of dismissing the action. *See* 751 F.Supp. at 1136. On remand from our decision in *Scottish Air III,* Judge Kram ruled that the *forum non conveniens* factors previously weighed by Judge Edelstein still applied and dismissed the action on the same grounds. In weighing the private interest factors, Judge Edelstein found that all the potential witnesses, with the exception of Vi-

dockler, were citizens of Great Britain and the difficulty, cost, and disruption of requiring the attendance of such witnesses in New York—whether they were willing to appear or not—would be considerable. *Scottish Air II*, 751 F.Supp. at 1135. He also noted that plaintiffs would have problems securing relief, because an injunction requiring Vidockler's reinstatement on the British Caledonian board would be unenforceable in Great Britain and because proceedings in British courts would be required to enforce any damages awards. *Id.*

Plaintiffs object to the district court's finding that most of the potential witnesses are in Great Britain. They declare that several of these people reside in New York and are within the jurisdiction of the district court. But such assertion is unsupported. Apart from the 1966 settlement agreement—which, as explained above, was not breached—all of the alleged assurances and agreements took place in Great Britain, and the improper actions alleged in the amended complaint were taken by British Caledonian's former directors, most of whom reside in Great Britain. Plaintiffs' contention that the district court ignored several potential U.S. witnesses is, on this record, more wishful than real.

Plaintiffs also point out that any witnesses located outside the district court's jurisdiction can be deposed if they will not appear voluntarily. Even if this is true, it still was not error for the trial court to find that obtaining testimony would be inconvenient for the parties. *See Scottish Air II*, 751 F.Supp. at 1135. In *Allstate Life*, we observed that the live testimony of key witnesses was necessary where the plaintiffs alleged that the defendants had conspired to defraud them. We deemed such testimony necessary for the jury to assess the witnesses' credibility. *See id.*, 994 F.2d at 1001. Similarly, the credibility of the witnesses in the present case is crucial, because plaintiffs' primary theories of recovery involve oral assurances and a conspiracy among British Caledonian's former directors to deprive Scottish Air of representation on their board.

In addition, most—if not all—relevant documents are located in Great Britain. Al-though plaintiffs apparently concede that this was true when Judge Edelstein so found, they maintain that they received numerous documents in the course of discovery in a separate action between Scottish Air and Leonard Bebchick, British Caledonian's counsel, in the Eastern District of New York. As a result, they aver, no additional documents are needed from Great Britain. This blithe assertion, however, is contradicted by the fact that plaintiffs have sought additional documents from Great Britain since the action in the Eastern District of New York was settled.

We also reject plaintiffs' contention that the district court improperly relied on the unenforceability of an injunction giving Vidockler a seat on the British Caledonian board. The district judge explicitly recognized the plaintiffs' argument that the claim for injunctive relief had become moot, *Scottish Air IV*, 152 F.R.D. at 31 n. 3, and still concluded that dismissal was warranted. Moreover, reliance on an erroneous factual assumption in evaluating the *Gilbert* factors does not necessarily warrant reversal where it does not "fatally undermine the court's findings." *See Borden*, 919 F.2d at 828.

Similarly, despite plaintiffs' argument that British Airways has undertaken to ensure the payment of any money judgment against British Caledonian, the district court's reliance on the unenforceability of a damages award does not warrant reversal. Because British Airways has not agreed to stand behind the individual defendants, the possibility that the guarantee will reduce the potential inconvenience is speculative. In sum, it was not an abuse of discretion to conclude that the private interest factors weigh heavily in favor of dismissal.

### C. Public Interest Factors

With respect to the public interest factors, the trial court emphasized that New York has little interest in this litigation. Great Britain, on the other hand, "has a substantial interest in determining the legal rights to seats on the board of directors of a Scottish corporation." *Scottish Air II*, 751 F.Supp. at 1135. It also reasoned that British law will

apply to critical issues because the litigation involves the internal affairs of a Scottish corporation. According to the district court, these factors strongly favored dismissal. *Id.* at 1136.

When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law. *See Schertenleib v. Traum,* 589 F.2d 1156, 1165 (2d Cir.1978). Under the generally-recognized choice-of-law rule, questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation. *See, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983); *Zion v. Kurtz,* 50 N.Y.2d 92, 100, 428 N.Y.S.2d 199, 405 N.E.2d 681 (1980). Plaintiffs nevertheless insist that any foreign-law questions were relevant only to the claim for injunctive relief. We disagree.

In the first place, the instant suit involves at least some matters of internal corporate governance, such as the enforceability of an agreement entitling a shareholder to representation on a board of directors, regardless of the remedy sought by plaintiffs. Second, even leaving aside matters of internal governance, British law would likely apply to all the other issues in the suit. Although plaintiffs contend that the relevant agreements provided that New York law would apply, the only explicit choice-of-law provision appeared in the 1966 settlement agreement. As already explained, plaintiffs have no valid claim that Vidockler's ouster from the British Caledonian board constituted a breach of the 1966 agreement. The choice-of-law clause is therefore irrelevant. Any contractual liability would necessarily be based on subsequent transactions, which in a New York court would almost certainly be governed by British law because Great Britain "has the most significant contacts with the matter in dispute." *Auten v. Auten,* 308 N.Y. 155, 160, 124 N.E.2d 99 (1954). In short, "the public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft,* 454 U.S. at 251, 102 S.Ct. at 263 (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843).

Third, it was also appropriate to take into account that Great Britain has a more substantial interest because the litigation involves the right to a seat on the board of directors of a Scottish corporation. Although courts must not decline to exercise jurisdiction solely to avoid deciding matters involving foreign corporations, *see Koster,* 330 U.S. at 527, 67 S.Ct. at 833; *Williams v. Green Bay & W. R.R.,* 326 U.S. 549, 553–54, 66 S.Ct. 284, 286–87, 90 L.Ed. 311 (1946), the relative interests of the alternative forums in the litigation are relevant to the *Gilbert* analysis.

Plaintiffs also complain that the district court ignored various advantages of a New York forum, including the plaintiffs' ability to retain American lawyers familiar with the case, the benefit of a sympathetic jury, and that Vidockler would not wish to start again in a foreign court. Although litigating in Great Britain is obviously less advantageous for plaintiffs, and the disposition of the present case has, for a variety of reasons, taken an extraordinarily long time, "some inconvenience or the unavailability of beneficial litigation procedures similar to those available in federal district courts does not render an alternative forum inadequate." *Borden,* 919 F.2d at 829 (internal quotations and citations omitted). The district court's analysis and conclusion that the public interest factors weighed in favor of granting the motion to dismiss cannot be said to be an abuse of discretion.

Finally, we reject plaintiffs' contention that a district court is precluded from ruling on one substantive issue and subsequently dismissing the action. *Forum non conveniens* is a doctrine that necessarily requires great flexibility. *See Piper Aircraft,* 454 U.S. at 249, 102 S.Ct. at 262. Depending upon the facts of the particular case, a district court may dismiss part of a lawsuit while deciding the merits of other issues. *See, e.g., Olympic Corp. v. Societe Generale,* 462 F.2d 376, 378 (2d Cir.1972) (affirming dismissal of third-party complaint under *forum non conveniens* doctrine but reversing

dismissal of complaint); *cf. United Technologies Corp. v. Liberty Mutual Ins. Co.,* 407 Mass. 591, 555 N.E.2d 224, 225 (1990) (rejecting "any suggestion that forum non conveniens is an all-or-nothing doctrine"). Although deciding related questions in different courts may often be inconvenient and inefficient, a contrary rule would reduce the flexibility of the doctrine and would allow litigants to skew the *Gilbert* analysis by joining claims that lack merit. In the present case the contempt claim by definition could only be decided in the Southern District of New York, and it was not inappropriate to grant summary judgment with respect to that claim and to dismiss the remainder of the action on *forum non conveniens* grounds.

 We add parenthetically that the district court arguably should have made explicit that the dismissal is conditional, because plaintiffs represented to the district court that the statute of limitations governing contract questions had expired in Great Britain. *Cf. Calavo Growers of California v. Generali Belgium,* 632 F.2d 963, 968 (2d Cir.1980) (affirming *forum non conveniens* dismissal but remanding for determination of whether defendants would consent to conditional dismissal), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *Schertenleib,* 589 F.2d at 1166 (affirming dismissal but requiring defendant to waive limitations defenses). There is no need to remand the case to obtain the consent of the defendants to waive such defenses here, however, because defendants already consented to do so—and to submit to the jurisdiction of the British courts—following the district court's first dismissal order. Moreover, plaintiffs have apparently withdrawn their limitations argument and have not seriously argued that Great Britain is an inadequate forum, apart from the purported inconvenience this plaintiff would suffer if required to litigate there.

## CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.