**USHA (INDIA), LTD., individually and on behalf of USHA Amorphous Metals, Ltd., USHA Information Systems, Ltd., individually and on behalf of USHA Amorphous Metals, Ltd., and RKKR Infotech Private, Ltd., individually and on behalf of USHA Amorphous Metals, Ltd., Plaintiffs–Appellants,**

v.

**HONEYWELL INTERNATIONAL, INC., formerly known as AlliedSignal, Inc., Hitachi Metals America, Ltd., and Hitachi Metals, Ltd., Defendants–Appellees.**

Docket No. 04–2158–CV.

United States Court of Appeals, Second Circuit.

Argued: May 13, 2005.

Final Submission: June 13, 2005.

Decided: Aug. 29, 2005.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

SACK, Circuit Judge.

The plaintiffs brought suit in the United States District Court for the Southern District of New York (Denny Chin, *Judge*), alleging claims arising under the laws of the Republic of India. The plaintiffs asserted that they chose to bring suit in the Southern District of New York principally because, as a result of prospective delay in India's courts, India did not provide an adequate alternative forum. The district court, after hearing expert testimony from both sides, concluded that India did provide an adequate forum, and dismissed the case on the ground of *forum non conveniens*.

## BACKGROUND

We, as did the district court, *see Usha (India), Ltd. v. Honeywell Int'l Inc.*, No. 03 Civ. 0494, 2004 WL 540441, at *1, 2004 U.S. Dist. LEXIS 4236, at *2 (S.D.N.Y. Mar. 17, 2004), take the facts of the underlying dispute from the amended complaint and assume them to be true for purposes of reviewing the *forum non conveniens* dismissal.

*The Parties*

Richard C. Ebeling, Law Office of Richard C. Ebeling, Jefferson Valley, NY, for Plaintiffs–Appellants.

Jonathan F. Putnam, Kirkland & Ellis LLP, New York, NY, for Defendants–Appellees (Shiva S. Farouki, David T. Huang, Kirkland & Ellis LLP, for Defendants–Appellees, David Leichtman, Morgan Lewis & Bockius LLP, New York, NY, for Defendant–Appellee Hitachi Metals America, Ltd., of counsel).

The plaintiffs, Usha (India), Ltd. ("Usha India"), Usha Information Systems, Ltd. ("UIS"), and RKKR Infotech Private, Ltd. ("RKKR"), are corporations organized and existing under the laws of the Republic of India, with their principal offices in India. Usha Amorphous Metals, Ltd. ("UAML"), also an Indian corporation, is a joint venture that was created and initially owned by Usha India and defendant Honeywell International, Inc. ("Honeywell"). Usha India's holdings in UAML were transferred to UIS and then to RKKR. UIS and

RKKR are therefore successors-in-interest to Usha India with respect to UAML.

Honeywell is a Delaware corporation with its principal office in New Jersey. Hitachi Metals, Ltd., is a corporation organized and existing under the laws of Japan. Hitachi Metals America, Ltd., a New York corporation with its principal office in New York, is a wholly owned subsidiary of Hitachi Metals, Ltd.

## The Facts

In the late 1980s, Honeywell, which manufactured and sold amorphous metal products[1] under the name Metglas®, sought to manufacture and sell such products in the Republic of India. At that time, the laws of India forbade non-Indian companies from owning a one-hundred-percent interest in an Indian company or from otherwise establishing a direct presence in India. In 1987, Honeywell therefore agreed with Usha India to create an Indian-based joint venture, UAML, to make and sell amorphous metal products. On March 23, 1987, Usha India and Honeywell executed a Memorandum of Understanding setting forth the parties' agreement to form an Indian corporation under the Indian Companies Act of 1956. Under the resulting shareholders' agreement, Usha India would own sixty percent of the equity in UAML, and would sponsor three of the five members of its board of directors. Honeywell would own forty percent of the equity and would appoint the remaining two directors.

In 1993, the parties agreed that Honeywell would increase its equity interest in UAML to fifty percent. Honeywell thereupon purchased additional shares of UAML capital stock from Usha India for the equivalent of approximately $153,000.

Thereafter, the partners decided to expand operations in India. Usha India agreed to contribute real estate in exchange for more UAML shares, while Honeywell agreed to contribute technology in exchange for the same number of new shares. This agreement was memorialized in a "Technology Transfer Agreement" executed in February 1994. The plaintiffs allege that the transfer agreement was a "sham" and that Honeywell's actual intention was to destroy UAML. Am. Compl. ¶ 33. They further assert that "[w]hile weakening UAML, and stalemating the Usha-sponsored Directors from taking remedial action, Honeywell was secretly implementing a plan to create a wholly owned subsidiary in India, the purpose of which was to arrogate UAML's business for itself." *Id.* ¶ 35.

In 1995, the foreign investment laws of India were changed to permit foreign entities to own one-hundred-percent interests in Indian companies. In April 1996, Honeywell applied for and was granted permission to establish an Indian corporation, Honeywell India Private Ltd. ("Honeywell India"), as its wholly owned subsidiary. In 1998, Honeywell India applied for approval to manufacture amorphous metal products in India. The plaintiffs contend that "[t]hus, in late 1998, through a lengthy and secretive conspiracy with its nominated UAML Directors, Honeywell had all the pieces in place to destroy UAML in favor of its wholly owned competitive enterprise." Am. Compl. ¶ 48. The plaintiffs further assert that Honeywell then tried to incapacitate

---

1. "Amorphous [m]etals, also known as metallic glass alloys, differ from traditional metals in that they have a non-crystalline structure and possess unique physical and magnetic properties that combine strength and hardness with flexibility and toughness." Metglas® Inc., Hitachi Metals America, Ltd., *About Metglas, Inc.*, at http://www.metglas.com/about.htm (last visited August 27, 2005).

UAML by competing with it and disabling it through unfair practices and deceit. *Id.* ¶¶ 48–60.

In May 2003, the President of Honeywell's Amorphous Metals Division, who was also a UAML director, informed the UAML board that Honeywell had agreed to sell its Metglas business to Hitachi Metals, Ltd., but planned to retain its stake in UAML. Hitachi Metals, Ltd., announced that its United States subsidiary, Hitachi Metals America, Ltd., would acquire the Metglas business. The plaintiffs assert that "the Hitachi transaction involve[d] the sale of assets which Honeywell misappropriated from UAML over the years . . . including . . . technology, equipment, unique manufacturing processes and other trade secrets, personnel, and business opportunities." *Id.* ¶ 64.

On the basis of these allegations, the plaintiffs filed suit in the United States District Court for the Southern District of New York asserting a variety of claims against Honeywell and the two Hitachi entities. These claims all arise under the laws of India. *See Usha (India), Ltd.,* 2004 WL 540441, at *1, 2004 U.S. Dist. LEXIS 4236, at *1. The defendants moved to dismiss on the ground of *forum non conveniens,* and, on March 17, 2004, the district court granted the motion.

This appeal followed.

## DISCUSSION

### I. Jurisdiction

█ We note as a preliminary matter that the parties assert that the district court had jurisdiction over this action pursuant to 28 U.S.C. § 1332, which provides for diversity jurisdiction for disputes between, *inter alia,* "citizens of a State and citizens or subjects of a foreign state," *id.* § 1332(a)(2). "[W]e are obliged to satisfy ourselves that jurisdiction exists." *Mentor*

*Ins. Co. (U.K.) Ltd. v. Brannkasse,* 996 F.2d 506, 512 (2d Cir.1993); *see also Travelers Ins. Co. v. Carpenter,* 411 F.3d 323, 328 (2d Cir.2005).

In their amended complaint, the plaintiffs named as defendants in addition to Honeywell, Hitachi Metals America, Ltd., and Hitachi Metals, Ltd. As noted, the plaintiffs are all Indian corporations; defendants Hitachi Metals America, Ltd., and Honeywell are New York and Delaware corporations, respectively. But Hitachi Metals, Ltd., is a Japanese corporation, and the presence of foreign citizens—the plaintiffs and Hitachi Metals, Ltd.—on both sides of the dispute might well destroy diversity jurisdiction with respect to this action. *See Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 581 (2d Cir.2002) ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens."); *Mentor Ins. Co.,* 996 F.2d at 512 ("[A]lignment of alien corporations as both plaintiffs and defendants defeats the allegation of diversity jurisdiction . . . .").

Hitachi Metals, Ltd., was never served with process, however. Under the Federal Rules of Civil Procedure,

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Although Rule 4(m) creates an exception for "service in a foreign country pursuant to subdivision (f),"

which sets forth procedures for such service, *see* Rule 4(f), this exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country. *See Mentor Ins. Co.,* 996 F.2d at 512; *Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 (2d Cir.1985). The plaintiffs concede, and the defendants do not contest, that the plaintiffs did not attempt service on Hitachi Metals, Ltd. "Had the district court addressed the issue, it would have been required to dismiss the action as to" Hitachi Metals, Ltd. *Mentor Ins. Co.,* 996 F.2d at 512. We therefore now dismiss the action as to Hitachi Metals, Ltd., pursuant to Rule 4(m). *See id.* The requirements of diversity jurisdiction are therefore satisfied. *Id.*

## II. *Forum Non Conveniens*

■ Having dismissed Hitachi Metals, Ltd., as a defendant, we have no doubt that the district court properly exercised jurisdiction over the remaining parties to this action and the action itself. The defendants nonetheless moved for its dismissal on the ground of *forum non conveniens.* They asserted that the Southern District of New York is an inconvenient forum for adjudicating this dispute because it involves claims arising under the laws of India and most of the events in issue allegedly occurred there.

■ "In deciding where a trial should be held the central notions of the doctrine of *forum non conveniens* are the convenience of the parties and their witnesses and that justice be served." *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1227 (2d Cir.1996). "The decision to dismiss a case on *forum non conveniens* grounds 'lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been *clearly abused.'" Iragorri v. United Techs. Corp.,* 274 F.3d 65, 72 (2d Cir.2001) (en

banc) (quoting *Scottish Air Int'l, Inc.,* 81 F.3d at 1232 (emphasis added in *Iragorri* )).

■ "The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum." *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir. 2001) ("*BCCI Overseas*"). Second, the court must determine the level of deference to accord the plaintiff's choice of forum. *Gross v. British Broad. Corp.,* 386 F.3d 224, 230 (2d Cir.2004). Third, the court "must weigh the public and private interests ... in order to determine which forum 'will be most convenient and will best serve the ends of justice.'" *BCCI Overseas,* 273 F.3d at 246 (quoting *Alfadda v. Fenn,* 159 F.3d 41, 46 (2d Cir.1998)).

■ With respect to the second and third parts of the *forum non conveniens* analysis, we do not disagree with the district court's decision: The balance of interests—after taking into account the deference due the plaintiffs' choice of forum, and in light of the location of the parties, witnesses and the dispute, the nature of the dispute and the apparent applicability of Indian law—plainly favors an Indian forum. We have no need to inquire as to the proper level of deference that is due the plaintiffs in their choice of forum, *see Iragorri,* 274 F.3d at 71–72 (setting forth "sliding scale" by which to evaluate foreign plaintiff's choice of forum), because we conclude that irrespective of the level of such deference, the balance of private and public interests weighs decisively in favor of adjudicating the case in the courts of India rather than in the Southern District of New York.

At the heart of the dispute on appeal, though, is the district court's conclusion on the first issue: that the New Delhi High

Court—in which, the parties agree, these causes of action would be pursued in India—provides the plaintiffs with an adequate alternative forum. There is no doubt about the capability and competence of that court. The plaintiffs contend, however, that the backlog of cases and continuing congestion there will prevent them from obtaining meaningful relief, and that the court is therefore not an adequate forum. They assert that even if that backlog is reduced by a recent increase in the court's amount-in-controversy requirement, it would take ten to fifteen years for the New Delhi High Court to adjudicate their claims. The plaintiffs assert that such a delay renders the forum inadequate.

The defendants do not question the plaintiffs' underlying contention that if it would take ten to fifteen years for the New Delhi High Court to reach and decide a vigorously prosecuted action with respect to this dispute, it is an inadequate alternative forum. Instead, they point to their expert's testimony, presented to the district court by affidavit, that it would take only two to three years to adjudicate the plaintiffs' claims in the New Delhi High Court based on the timetable provided under recently amended procedural rules. We have our doubts about the value of the defendants' expert testimony on this point. His estimate does not appear fully to take into account the existence of the New Delhi High Court's current backlog—even re-

duced by the change in the amount-in-controversy requirement—and how the backlog may affect the time it would take for the court to reach and decide this case.[2]

■ As noted, we recognize that "[t]he first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum," *BCCI Overseas,* 273 F.3d at 246, and the defendant or defendants who brought the *forum non conveniens* motion have the burden of proof on this issue, *Aguinda v. Texaco, Inc.,* 303 F.3d 470, 476 (2d Cir. 2002). Based on our analysis of the parties' submissions, we might simply decide that the defendants have failed to meet that burden and that the judgment of the district court ought therefore to be vacated. But we do not think that such a resolution of this appeal is necessary. Nor do we think it would be to the benefit of either party: We think, as the defendants contend, that taking into account both public and private interests—provided only that proceedings in India can be concluded with reasonable dispatch—resolution of the dispute among the parties in India clearly " 'will be most convenient and will best serve the ends of justice,' " *BCCI Overseas,* 273 F.3d at 246 (quoting *Alfadda,* 159 F.3d at 46). We therefore conclude that the district court's final determination of whether this action should be dismissed with prejudice ought to be post-

---

**2.** The defendants' expert described the backlog in a separate section of his affidavit from that in which he opined that it would take two to three years to adjudicate the case in the New Delhi High Court under India's procedural rules. In discussing the backlog, he concluded that it would total approximately 3000 cases even after a recent increase in the amount-in-controversy requirement. Makhija Aff. ¶ D(18). While the plaintiffs' expert did not dispute this estimate, he testified that it would take approximately ten years for the

New Delhi High Court to work through the 3000–case backlog, based on the expected number of judges on the court and the rate at which they have disposed of cases in the past. Krishnamani Aff. ¶ C(29). He therefore concluded that it would take ten to fifteen years to adjudicate the case in the New Delhi High Court even given the increase in the amount-in-controversy requirement and the amendments to India's procedural code referenced by the defendants' expert. *Id.* ¶ C(33).

poned for a period of eighteen to twenty-four months. During such time, we expect the plaintiffs to pursue their claims in India, and we anticipate that an answer to whether the defendants have indeed carried their burden that adjudication there will be reasonably prompt and that it is therefore an adequate alternative forum will become substantially more clear.

We "may ... modify ... any judgment ... of a court lawfully brought before [us] for review, and may remand the cause and direct the entry of such appropriate judgment ... or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106; *see also Aguinda,* 303 F.3d at 475, 478. We think that it is "just under the circumstances" of this case to modify the district court's judgment of dismissal so that it is without prejudice to the plaintiffs' ability, by motion brought before the district court, to reinstate this action within a reasonable period of time hereafter, depending on the course of litigation, if any, in the New Delhi High Court. We further modify the judgment to make the dismissal contingent upon the defendants' waiving of any statute-of-limitations defense that would bar this case, if promptly hereafter commenced, from being heard in an Indian forum. The case shall be placed on the district court's suspense docket if so dismissed. The dismissal is without prejudice only insofar as the plaintiffs may make the motion referred to above in the district court to reinstate this action no sooner than eighteen months and no later than two years after the date hereof.

On remand, consistent with this opinion, the district court may alter the time limitation stated herein and add any other conditions to bringing such motion that it deems appropriate. In the event that the plaintiffs make a motion to reinstate this action in accordance herewith, the district court shall grant the motion unless the defendants demonstrate to the district court's satisfaction 1) that the plaintiffs have not both promptly brought and vigorously pursued their claims in the New Delhi High Court or some other appropriate Indian court, 2) that the claims are likely to be adjudicated with reasonable dispatch, or 3) that the plaintiffs have not substantially complied with the terms of any additional orders consistent with this opinion that the district court may enter. If the motion is granted, this action shall be restored to the active docket of the district court. If the motion is denied or not brought within the applicable time period, then the district court may dismiss the case with prejudice.

■ With the judgment so modified, we think any error committed by the district court in concluding that India provides an adequate alternative forum is harmless. *Cf. Scottish Air Int'l, Inc.,* 81 F.3d at 1233 (applying harmlessness analysis to district court's evaluation of *Gilbert* factors); *Indasu Int'l, C.A. v. Citibank, N.A.,* 861 F.2d 375, 380 (2d Cir.1988) ("[A] party challenging a determination of *forum non conveniens* must display substantial prejudice."). We thus affirm the judgment as modified.

## CONCLUSION

For the foregoing reasons, we modify the judgment of the district court as set forth above. As modified, the judgment is affirmed, and the case is remanded for further proceedings consistent with this opinion.